JAMES A. SUMMERS *v.* STATE OF INDIANA.

[No. 372A129. Filed August 16, 1972.]

*William C. Erbecker,* of Indianapolis, *Woodrow S. Nasser,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LYBROOK, J.—Appellant-defendant (Summers) was charged by affidavit with "Attempt to Commit a Crime While Armed With a Deadly Weapon". He pleaded guilty and was sentenced to the Indiana Reformatory for a term of one to fifteen years.

After judgment was entered, defendant filed a Motion to Correct Errors alleging that he was incompetent at the time he entered his plea and moving the court to vacate the judgment and allow him to withdraw his plea. From the denial of the Motion to Correct Errors, Summers appeals.

Before consideration of the issues, a recitation of certain facts is necessary.

On April 22, 1971 at 4:16 A.M., officers of the Terre Haute Police Department caught Summers, age 29, attempting to pry open the front door of a tavern. Defendant fled but was captured a short distance away. When apprehended he dropped a tire tool and a loaded .22 caliber revolver from his hand.

After a probable cause hearing an affidavit was filed, bond fixed and arraignment continued until May 7. On this date, Summers' attorney, R. Jerome Kearns, appeared and was granted a continuance because defendant was confined to Union Hospital.

Three more continuances were granted the defendant and on July 19, 1971 Summers appeared in person and by counsel, waived formal arraignment and pleaded guilty. During the arraignment Summers was questioned by the Court concerning his understanding of his Constitutional rights, including his right to trial by jury and his understanding of the penalty. He was also questioned as to whether his guilty plea was the result of any threats and whether it was voluntary. After Summers routinely answered these questions, the plea of guilty was accepted, a pre-sentence investigation was ordered and sentencing was set for August 11, 1971.

A Pre-Sentence Investigation Report was filed by the Probation Officer on August 3, 1971, stating that Summers had a history of instability, listing several prior convictions and noting a successful adjustment period during parole.

The report further indicated that Summers and his wife had no financial problems, having a combined income of over $200.00 per week when he was fully employed and that they had saved approximately $3,000.00 in the expectation of buying a home. It also revealed that Summers had been subject to occasional crying spells when he was alone and that he was on a leave of absence from his employment. Summers stated that his reason for attempting to break in the tavern, was to talk with the bartender after closing hours as he had done in the past. At the time of his arrest he had $144.00 in cash with him. He stated he had been drinking beer all that day and night, in addition to taking medicine which had been prescribed by his psychiatrist, Dr. Gene Moore.

In a letter included in the report, Dr. Moore describes Summers as "suffering a psychoneurotic reaction, anxiety and depression." In this and other letters Dr. Moore had advised

defendant's counsel that Summers had been under his care since March 18, 1971, had been hospitalized and had received eight electro shock treatments between May 3 and May 17, 1971. The doctor concluded saying that a term in prison "will literally destroy this man" and stated that he was prepared to lay his professional reputation on the line in recommending a parole. While plaintiff's counsel was aware of the above, there is nothing in the record to suggest that the court had any knowledge of defendant's mental condition until the pre-sentence investigation was filed.

After another continuance Summers was sentenced to the Indiana Reformatory on August 16, 1971. On October 15, 1971 attorney Woodrow S. Nasser entered his appearance for the defendant and filed the Motion to Correct Errors. Accompanying the Motion was a Statement of Facts, an Affidavit by Nasser and copies of three letters from Dr. Moore, two to Kearns and one to Nasser. Dr. Moore stated in those letters that he had been treating Summers with shock treatments and drugs, that he believed that due to anxiety, Summers was incompetent to the extent that it was impossible for him to realize what he was pleading guilty to and that Summers was incompetent in the legal sense at the time of the crime.

The Motion to Correct Errors was denied and defendant was released on bond, pending the appeal.

We have detailed the above facts because, while the law is clear, the facts of each case differ and must be understood before the law can be correctly applied.

*Thacker* v. *State* (1970), 254 Ind. 665, 262 N. E. 2d 189, repeats the general rules governing a motion to vacate a judgment and withdrawal of a guilty plea. Such motions are addressed to the sound discretion of the trial court and where a trial court has overruled such a motion, this court on appeal, will indulge a presumption in favor of the trial court's ruling. (Citing cases.)

In *Allman* v. *State* (1968), 253 Ind. 14, 235 N. E. 2d 56,

Justice Hunter discusses the term "sound judicial discretion", stating that:

"The term 'sound judicial discretion' always brings into question on appeal whether discretion was 'wisely or unwisely' exercised, or 'unreasonably exercised,' or constituted 'prejudicial abuse' of discretion; or, as stated by the Supreme Court of the United States, whether its exercise was 'clearly erroneous'. It would appear that the descriptions, as above recited, when used by the various courts, very aptly and accurately express the exact judicial meaning of the term 'abuse of discretion.' Generally speaking there are two conditions which must be shown to exist to justify a court of appellate jurisdiction in setting aside a ruling made by a trial court in the exercise of judicial discretion:

(1) that the action complained of must have been unreasonable in the light of all attendant circumstances or it must have been clearly untenable or unreasonable; and

(2) that such action was prejudicial to the rights of the complaining party."

In *Allman, supra,* the defendant pleaded guilty without counsel, while his family was attempting to hire an attorney at that moment. After the sheriff suggested to the court that the defendant "might lack comprehension sufficient to understand the nature of the charge filed against him", the court immediately appointed two doctors to examine the defendant and set a date for a sanity hearing. Counsel later entered their appearance and moved to set aside the plea. A continuance requested for the purpose of affording the defendant the opportunity to secure other psychiatric testimony was denied. Although the trial judge dealt with the problem as soon as it was suggested to him, our Supreme Court held that in the exercise of sound judicial discretion, he should have vacated the plea. The court further stated:

"The State of Indiana advances the proposition that appellant's plea of guilty constituted a judicial confession of the crime charged, and that a conviction grounded upon such a plea is as conclusive as a jury's verdict. In support of this contention the State cites the cases of *Kuhn* v. *State* (1944),

222 Ind. 179, 52 N. E. 2d 491; *Harshman* v. *State* (1953), 232 Ind. 618, 115 N. E. 2d 501. We agree that those cases substantially support the State's position as to the nature and effect of a plea of guilty. However, the matter does not end there. We are of the opinion that in light of such a rule, it becomes the increasingly important duty of the courts of this state, when faced with a timely motion to withdraw a plea of guilty, to examine carefully the proceedings had at arraignment to determine whether all the rights of a defendant who pleaded guilty without the advice of legal counsel were zealously guarded and freely extended. Further, we hold that in instances where a timely motion to withdraw the plea has been filed, the trial court's concern should not be directed solely to the question of the court's own legal justification in originally accepting the plea of guilty."

Ascertaining the mental competence of a defendant calls for the determination of a most elusive fact. Was the plea of James Summers in the case at bar entered knowingly, willingly, understandingly and intelligently? This question can only be answered after a thorough inquiry into the defendant's state of mind. We are not critical of the trial judge for failing to inquire into defendant's competence at arraignment, since there was nothing to put him "on guard". The court had no other choice at arraignment than to rely on the presumption of defendant's sanity. However, when the court is alerted by a strong and positive statement that the defendant is incompetent, an inquiry is essential.

We do not imply that a mere, bald assertion of incompetence requires the withdrawal of a guilty plea. We do hold, however, that when the defendant's competence has been substantially questioned, the court, in the exercise of judicial discretion, must make further inquiry to ascertain the true facts, as the court attempted to do in *Allman, supra.*

At arraignment, it is absolutely essential that defendant be competent to understand and cope with the problems involved. When the question of mental competence arises, it must be answered before the judicial machinery completes its cycle.

The following language from *Goff* v. *State* (1960), 240 Ind. 267, 163 N. E. 2d 888, is appropriate:

> "Where there is an abuse of discretion, the court, on appeal, will review the ruling *even where the application for leave to withdraw the plea is made after judgment.* A verified plea, uncontroverted, that the guilty plea was not made understandingly or freely, should be granted. 'No harm could have resulted to society or to the State by permitting a withdrawal by appellant of the plea of guilty and to allow him to plead not guilty. . . .' *Dobosky* v. *State* (1915), 183 Ind. 488, 492, 109 N. E. 742, 744." (Our emphasis.)

We do not imply that in determining competence, the trial courts should not exercise their judicial discretion. On the contrary, we hold that they should exercise it with full knowledge of all the attendant facts and circumstances.

In the case at bar, defendant's competence was substantially questioned. However, the necessary inquiry into the attendant facts and circumstances was not sufficiently made.

Therefore, in accordance with Appellate Rule 15(M) (6), the judgment committing the appellant to the Indiana Reformatory is ordered vacated and set aside. The court is ordered to conduct a hearing to determine defendant's competence at the time of his guilty plea.

We further direct and order that:

(a) If defendant is found to have been incompetent at said time, his plea of guilty shall be vacated and set aside and further proceedings shall be had, not inconsistent with this opinion.

(b) If defendant is found to have been competent at said time, his plea of guilty shall stand and the court shall thereupon reenter such judgment as he deems appropriate.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported in 285 N. E. 2d 830.